# Case Docket Entries

CC-49-2025-C-42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Court: | **Circuit** | County: | **49 - Upshur** | Created Date: | **6/5/2025** | Security Level: | **Public** |
| Judge: | **Jacob E. Reger** | Case Type: | **Civil** | Case Sub-Type: | **Other** | Status: | **Open** |

Related Cases:

Style: **AMANDA B RIFFLE v. VANDERBILT MORTGAGE & FINANCE, INC.**

| | Entered Date | Event | Ref. Code | Description |
|---|---|---|---|---|
| 1 | 6/5/2025 11:12:33 AM | E-Filed | | Complaint |
| | 1-1 6/5/2025 | Civil Case Information Statement | | |
| | 1-2 6/5/2025 | Complaint - COMPLAINT | | |
| | 1-3 6/5/2025 | Transmittal | | |
| | 1-4 6/5/2025 | Summons | | |
| 2 | 6/5/2025 11:12:33 AM | Judge Assigned | J-49002 | Jacob E. Reger |
| 3 | 6/5/2025 11:12:33 AM | Party Added | P-001 | AMANDA B RIFFLE |
| 4 | 6/5/2025 11:12:33 AM | Party Added | P-002 | JASON C RIFFLE |
| 5 | 6/5/2025 11:12:33 AM | Party Added | D-001 | VANDERBILT MORTGAGE & FINANCE, INC. |
| 6 | 6/5/2025 11:12:33 AM | Attorney Listed | P-001 | A-1660 - Daniel F. Hedges |
| 7 | 6/5/2025 11:12:33 AM | Attorney Listed | P-002 | A-1660 - Daniel F. Hedges |
| 8 | 6/5/2025 11:12:33 AM | Service Requested | D-001 | Filer - Secretary of State |
| 9 | 6/5/2025 12:29:08 PM | E-Filed | | Reissue/Additional Summons - SUMMONS |
| | 9-1 6/5/2025 | Supporting Document - COMPLAINT | | |
| | 9-2 6/5/2025 | Transmittal | | |
| | 9-3 6/5/2025 | Summons | | |
| 10 | 6/5/2025 12:29:08 PM | Service Requested | D-001 | Circuit Clerk - Certified Mail - Including Copy Fee |
| 11 | 6/5/2025 1:09:52 PM | Scanned Document | | Certified Mail Tracking - Summons/Complaint mailed to Vanderbilt Mortgage & Finance Inc Cert. Mail rrr 6/5/25, filed 6/5/25 |
| | 11-1 6/5/2025 | Certified Mail Tracking - Summons/Complaint mailed to Vanderbilt Mortgage & Finance Inc Cert. Mail rrr 6/5/25, filed 6/5/25 | | |
| 12 | 6/12/2025 10:16:51 AM | E-Docketed | | Service Return - RET RECPT signed N. Mushy for Vanderbilt Mortgage & Finance Inc. 6/10/25, filed 6/12/25 |
| | 12-1 6/12/2025 | Service Return - RET RECPT signed N. Mushy for Vanderbilt Mortgage & Finance Inc. 6/10/25, filed 6/12/25 | | |
| | 12-2 6/12/2025 | Transmittal | | |



**Exhibit A - NOR**

# COVER SHEET

E-FILED | 6/5/2025 11:12 AM
CC-49-2025-C-42
Upshur County Circuit Clerk
Brian P. Gaudet

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF UPSHUR COUNTY WEST VIRGINIA
**AMANDA B RIFFLE v. VANDERBILT MORTGAGE & FINANCE, INC.**

**First Plaintiff:** ☐ Business ☑ Individual ☐ Government ☐ Other

**First Defendant:** ☑ Business ☐ Individual ☐ Government ☐ Other

**Judge:** Jacob E. Reger

## COMPLAINT INFORMATION

**Case Type:** Civil

**Complaint Type:** Other

**Origin:** ☑ Initial Filing ☐ Appeal from Municipal Court ☐ Appeal from Magistrate Court

**Jury Trial Requested:** ☑ Yes ☐ No

**Case will be ready for trial by:** 6/5/2026

**Mediation Requested:** ☐ Yes ☑ No

**Substantial Hardship Requested:** ☐ Yes ☑ No

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

- ☐ Wheelchair accessible hearing room and other facilities
- ☐ Interpreter or other auxiliary aid for the hearing impaired
- ☐ Reader or other auxiliary aid for the visually impaired
- ☐ Spokesperson or other auxiliary aid for the speech impaired
- ☐ Other: ______

☐ I am proceeding without an attorney

☑ I have an attorney: Daniel Hedges, 1217 Quarrier St , Charleston, WV 25301

**Exhibit A - NOR**

# SERVED PARTIES

**Name:** VANDERBILT MORTGAGE & FINANCE, INC.

**Address:** C/O CT CORPORATION SYSTEM 5098 WASHINGTON ST W STE 407, CHARLESTON WV 25313

**Days to Answer:** 30 **Type of Service:** Filer - Secretary of State

**Exhibit A - NOR**

E-FILED | 6/5/2025 11:12 AM
CC-49-2025-C-42
Upshur County Circuit Clerk
Brian P. Gaudet

**IN THE CIRCUIT COURT OF UPSHUR COUNTY, WEST VIRGINIA**

**AMANDA B. RIFFLE and**
**JASON C. RIFFLE,**

**Plaintiffs,**

**v.** **CIVIL ACTION NO. _______________**

**VANDERBILT MORTGAGE & FINANCE, INC. a corporation**
**and affiliate of Clayton Homes, Inc,**

**Defendant.**

## COMPLAINT

1. This case arises out of the deceptive origination by bait and switch financing with the Defendant at an exploitive price initiated at the Clayton Homes lot near Buckhannon. Plaintiffs were induced into the excessively priced, doublewide financing by the representation of an all-utilities-included package, completed very quickly for a specific price, only to discover that the price and rate were false, that there were a host of defects, and that the suppressed exorbitant total sale price for a doublewide exceeded $840,000. The Riffles were forced to wait over six months to move into the home, a year later still do not have utility (gas) access, are living with serious installation failures, and are up against long term unaffordability. The Plaintiffs bring this action to enforce revocation of acceptance, for restitution, civil penalties, damages and other appropriate relief.

## PARTIES

2. Plaintiffs Amanda B. Riffle and Jason C. Riffle are a married couple residing at 644 Sandhill Road, Clarksburg, West Virginia, with their children. Jason Riffle is a truck driver, and Amanda Riffle is disabled. Mr. and Mrs. Riffle are unsophisticated in home-secured financing.



**Exhibit A - NOR**

3. Lender: Defendant Vanderbilt Mortgage & Finance, Inc. ("Vanderbilt" or "VMF") is a corporation licensed to do business in West Virginia with its principal place of business at 500 Alcoa Trail, Maryville, TN 37804. Defendant and the affiliate seller are subsidiaries of Clayton Homes, Inc. ("Clayton"), which is, in turn, a subsidiary of Berkshire Hathaway, Inc. Defendant Vanderbilt is liable for all claims and defenses arising out of the transaction, including those arising out of the acts of its agents and transaction participants.

4. Said Defendant is a "creditor" under TILA and Regulation Z, because Defendant regularly extends credit—specifically, home secured loans—to consumers for personal, family, or household purposes, where the credit is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and where the obligation is initially payable to Defendant. *See* 12 C.F.R. § 1026.2(12), (17), implementing 15 U.S.C. § 1602(g), (i).

**STATEMENT OF FACTS**

5. Jason and Amanda Riffle married on March 3, 2024, blending their families, including three children. As a wedding gift, Jason's parents gave the couple a nine-and-a-half-acre plot of land located at 644 Sandhill Road, Clarksburg, West Virginia.

**Agreement to Purchase**

6. Beginning in or around January 2024, the soon-to-be married couple began shopping for a home to place on the land, so that they could have a home large enough in which to reside as a family.

7. On or about February 12, 2024, Plaintiffs visited the Clayton Homes lot in Buckhannon, Upshur County, and before any significant determination regarding purchase, they were routed by the sales agent Ron Drenk to Defendant Vanderbilt for financing. Defendant

Vanderbilt arranged financing and credit through an agreement to transact business electronically with Plaintiff Jason Riffle.

8. The Plaintiffs received their provisional loan approval from Defendant Vanderbilt the next day, February 13, 2024, authorizing a loan up to $254,270.53 at the interest rate of 7.75% for the purchase of a mobile home from the Buckhannon lot. The loan approval stated that it was valid through June 11, 2025.

9. (a) On or about February 19, 2024, at the lot sales agent Jeremy Johnson (Ron Drenk was snowed in) priced out to the Plaintiffs the "Southern Charm" four bedroom, 2.5 bath doublewide. After discussion, the sales agent offered and wrote on the floor plan that the price (which included all utilities installed) would be $251,671.94 with blocks and installation included. He also wrote on the floor plan an optional price without the blocks. Plaintiffs agreed to the purchase at the "with blocks" price and relied on that price since it was within their loan approval. The agent then proceeded to write the home details on the floorplan as they planned them out together.

(b) The primary reasons for their agreement to proceed at that price were that (i) the price was within the loan approval and (ii) the agent's representation that the home and utilities could be installed and they could be in the home very quickly. They were not interested in any later offerings that would increase their loan amount.

10. On or about March 4, 2024, both Plaintiffs were forwarded at their separate residences by email from Defendant Vanderbilt a Notice to Transact Business Electronically and a credit application which they individually completed and returned.



**Exhibit A - NOR**

11. In order to induce the transaction, the agents represented to Plaintiffs that their home was already constructed and that they would be able to move into a ready home very quickly. This contrasted with a stick-built home.

12. In order to induce the transaction, Clayton Homes represented that it would provide nearly all the services required for installation and set-up of the home. This included delivery, soil evaluation, level and trim, connect all utilities including electric, gas, water and sewer.

13. The sales agent attempted to encourage them into a larger loan, saying that they could do a garage or driveway, but they were not interested.

14. Plaintiffs were required to make deposit of $1000 toward the agreed purchase and financing, which Plaintiff Jason Riffle paid in two $500 installments on or about March 11 and 18, 2024.

**Lack of Timely Closing Disclosure/ Suppression of Inflated Terms**

15. In order to permit an opportunity for meaningful and thoughtful consideration of credit terms, federal law mandates that the consumer be provided the preclosing disclosure of credit terms, *i.e.* a copy of the Closing Disclosure, at least 72 hours prior to closing.

16. The Plaintiffs were not provided with the Closing Disclosure three days prior to the closing. The essential terms that they relied on were suppressed from them.

17. Had they known and had the opportunity to discuss prior to closing that Vanderbilt had increased the cash price by over $40,000 in the sales agreement to $293,135.86, and set the total sale price at $840,263.11, they would not have proceeded to closing.

**Legally Defective Mortgage Closing**

18. Residential mortgage loan closings require compliance with federal and state law:



**Exhibit A - NOR**

(a) The Federal Truth in Lending Act requires disclosure of specific credit terms *prior to consummation* in a form the consumer can keep in order to allow knowledge of and meaningful consideration of credit terms.

(b) State law has a number of prohibitions and limitations specific to residential mortgage loans. W. Va. Code § 31-17-8. Willful disregard of any one of these provisions allows for the equitable relief of cancellation of the loan. W. Va. Code § 31-17-17. These include:

> (i) a lender may not secure a mortgage loan by any security interest in personal property unless affixed. W. Va. Code § 31-17-8(m)(5).
>
> (ii) each borrower must be provided at closing a signed copy of all executed documents. W. Va. Code § 31-17-8(j)(6).

19. (a) The Riffle closing was conducted at Judy Law Offices in Elkins, West Virginia on June 7, 2024. Lot manager Tom Young was in attendance but announced at the outset that he had forgotten his part of the transaction documents on his desk and that they would have to be provided later. He further indicated that that he had to be somewhere else and that the closing had to be completed as soon as possible.

(b) There was no meaningful opportunity afforded the Plaintiffs to learn of the terms contained in the stack of documents that the lot manager did not bring. The attorney left the room saying she was leaving the E-sign documents for the lot manager to handle. Tom Young had an iPad across the table which Plaintiffs could not read and simply asked them to press "accept" on the pad each time he brought up a document.

(c) The E-signed documents (and the other major transaction documents and disclosures) to which their electronic signatures were attached were not provided to the Plaintiffs at the closing. Instead, the lot manager added his signature the next day (June 8, 2024). Among the documents that were not provided to Plaintiffs were:

(i) **SALES AGREEMENT** (this document contained the inflated cash price of the home)

(ii) **CONSUMER LOAN NOTE AND SECURITY AGREEMENT** (this document contained the principal and note rate of interest and the remainder of the terms of the loan.)

(d) Had the Plaintiffs known that they were obligating themselves to a total sale price over $840,000 for this doublewide, they would have walked. Indeed, Plaintiff Amanda Riffle became nauseous when she learned of that sale price subsequent to closing.

**Willful Disregard of the Prerequisites of a Valid Residential Mortgage Loan**

20. (a) The Defendant lender willfully secured the mortgage loan with a security interest in personal property in violation of W. Va. Code § 31-17-8(m)(5).

(b) The Defendant lender willfully failed to provide a signed copy at closing of all executed documents in violation of W. Va. Code § 31-17-8(j)(6).

21. The Defendant took a security interest Plaintiffs' 9.5 acre parcel through the Deed of Trust and further took a security interest in personal property, the manufactured home, by placing a lien on the title.

**Installation Failures and Manufacturing Defects**

22. At the closing on June 7, 2024, Defendant's agents/affiliates issued a form 10B.4 Initial Home Placement Evaluation, stating that the site was accessible, the soil compaction tests showed the home could be installed in accordance with the manufacturer's instructions, and that any water control work needed could be done after the home was leveled.

23. On the day after the closing, June 8, 2024, the Plaintiffs had their initial walk through of the home at the Clayton lot. At that time, the following damaged items/areas were documented:



**Exhibit A - NOR**

(a) Island light
(b) Kitchen back splash tile off
(c) Drywall
(d) Laundry room wall and door area
(e) Patio door area
(f) Crown molding loose in kitchen
(g) Master bath walls
(h) Bedroom walls around window
(i) Living room crown molding and drywall
(j) Outside gas line

24. On or about June 17, 2024, Defendant's agent graded the site and poured footers.

25. On June 25, 2024, the home was moved onto the site, but the agents failed to contact or set up utilities for the home.

26. On July 22, 2024, three weeks after the represented move in date, Plaintiffs had their first walk-through of the home on their property. At that time, the following notes of damages and missing parts were recorded by Defendant's agent:

(a) Ceiling paint discolored
(b) Living room windows not squared up
(c) Dining room window not straight
(d) Siding damaged all the way around
(e) Vertical siding missing on porch
(f) Crown molding needs caulked throughout
(g) Trim loose throughout
(h) Paint on trim and rangehood
(i) Cracked ceiling in hall
(j) Drywall damaged in hallway nook
(k) Hall bath showerhead has paint on it
(l) Drywall cracked in master bedroom
(m) Door casing split in master bedroom
(n) Paint on linoleum in hallway
(o) Fascia dented and damaged
(p) Barn doors need adjusted
(q) Porch corner damaged
(r) Doors need adjusted throughout

27. A separate document, created the same day, listed many of the same problems, and added "tiling missing behind stove," and "ceiling needs repaired hall at kitchen." On that day,

Defendants representatives noted making several repairs, specifically adjusting the striker plate for multiple doors that were not latching, securing trim, and installing lights.

28. Despite being given the keys and "welcomed" to their new home, the home was not in a condition in which the Plaintiffs could move in; indeed, there were no utilities (water, electric, or gas).

29. Moreover, even with the extensive documentation of all the needed repairs and the utter lack of utilities, in the following months, Defendants did little to complete repairs or installation:

(a) Specifically, on August 8, 2024, Defendants listed repairs to the outside of the home, including holes in the siding, improper installation of the siding, bulging soffit on front porch, damaged fascia, improperly installed fascia.

(b) On September 30, 2024, Defendants visited the home and made some repairs, mainly recaulking and re-nailing loose tiles, door frames, window casings, and crown molding.

(c) When Plaintiffs asked about the utility set up, which they paid for in the financing transaction, they were simply referred elsewhere.

(d) While waiting months for these repairs to be done, and still not having any utilities, the Plaintiffs made numerous calls to the lot agent present at the closing, Tom Young, but all calls went unanswered and unreturned.

(e) Plaintiffs also began calling utility companies themselves, in hopes of getting the home into a condition in which they could move in. Plaintiffs reached out to Hope Gas and First Energy for electric to initiate installation.

30. Finally fed up with not being able to move into their new home, on October 11, 2024, Plaintiffs filed a complaint with the West Virginia Division of Labor, Board of Manufactured

Housing Construction & Safety ("DOL"). The complaint noted that as of that date, there were still no utilities installed at the home. The DOL came to the home, noted a few superficial items, but yet no meaningful remedy is forthcoming.

31. On or about October 23, 2024, the Plaintiffs forwarded a detailed complaint to Vanderbilt about the Lot Manager's failures.

32. Around this time, a regional manager announced a visit to the lot. Lot Manager Young took boxes to the dumpster, waited in his car for the refuse truck to arrive, then departed leaving a note of quit.

33. Throughout the fall, Plaintiffs continued to attempt to get utilities installed.

(a) Plaintiffs learned from Hope Gas that the fixtures had not been installed properly, and thus the company refused to connect the gas line.

(b) No water line was installed.

34. Unable to continue living separately since their marriage nine months earlier, the Plaintiffs moved into the home shortly after Christmas. There continues to be no gas utility or central heat/air. Plaintiffs were forced to purchase electric space heaters to heat their home during the winter. Not only was this outrageously expensive, it created a fire hazard and constant thrown breakers.

35. Plaintiffs grew increasingly concerned that the home was not structurally sound and engaged Solid Ground Engineering to perform an inspection of the home. An engineer inspected the home on December 26, 2024, and thereafter made the following findings (which he informally estimated would cost upwards of $100,000 to correct):

(a) The roof and surface grading are directing moisture toward the residence.



**Exhibit A - NOR**

(b) The vinyl siding is loose and bulging on each side of the residence; gaps, openings and separations were observed in the trim. These conditions will increase the risk of moisture intrusion into the walls.

(c) The railings on the built in porch are loose and poorly supported, and do not meet current safety standards.

(d) The ridge vent on the roof is undersized and does not extend the full length of the residence, and the dormer ridges are missing a ridge vent or ventilation openings; insufficient roof ventilation can affect the life expectancy of the shingles, and result in condensation/humidity damage in the residence.

(e) The shingles at the center of the roof are improperly sloped, which allows moisture to collect on the roof surface.

(f) The shingles on the roof are damaged including cracked/torn shingles, creased shingles, damaged tabs, improper roof slopes, loose shingles, improperly installed/placed fasteners, fastener uplift, fastener penetrations, and surface applied sealant applied as a previous repair, but which is not considered a permanent repair.

(g) Incomplete installation of the chimney, including tape on the flue, a loose flue vent, caulk and sealant on flue vent. Mr. Gray found that the chimney was not safe for use at that time.

(h) Floors inside the home are uneven and sloping; there were issues with trim and interior cracking throughout the home.

(i) Unsealed openings were observed in the utility/mechanical room, which could allow vermin into the residence.

(j) Outside, the footing for the skirt wall was visible at or above the finish grade level. The footing is shallow and varies in thickness and width where visible. Mr. Gray concluded that

the skirt wall footing does not appear to have been designed and properly installed for the location of the residence.

(k) Upon entering the crawl space, Mr. Gray observed water stains, damp soils, and large areas of standing water under the residence. Conditions suggest that either no foundation drain was installed, or it is not functioning properly.

(l) Water is standing over the anchor system that was installed to secure the residence to the foundation, thereby compromising the integrity of the anchor system.

(m) Insufficient ventilation and elevated levels of moisture throughout the crawl space.

(n) The support piers are constructed of dry stacked, hollow, concrete masonry units; they need to be grouted or mortared to be considered permanent foundation supports.

(o) Various support piers are leaning out of plumb.

(p) Support piers were missing or not constructed in the necessary locations.

(q) Shims at some piers are undersized and do not provide sufficient bearing support for the steel chassis of the residence.

(r) Weak joist connections were observed at the built in porch floor framing and separations were observed where the joists met the support beams.

(s) The HVAC trunk lines were disconnected.

(t) The electrical service line is improperly secured and has shifted and separated the conduit that is protective the electric service line.

36. Plaintiff's Amanda Riffle's heart condition disability is exacerbated daily by the lack of ventilation.

**Revocation of Acceptance**

37. On or about March 3, 2025, the Plaintiffs revoked acceptance of the purchase and financing thereof by forwarding notices of revocation of acceptance to the Defendant and its selling agent.

38. On or about March 14, 2025, the Defendant received the Plaintiffs' revocation.

39. The Defendant has not acted upon or accepted the revocation.

**Damages**

40. The Plaintiffs have been subjected to annoyance and inconvenience, fear of loss of home, emotional distress, damage to credit and economic loss.

41. The Plaintiffs later learned that the 2024 Southern Charm they purchased had a market value of between $180,000 and $200,000 depending on installation costs.

**CLAIMS FOR RELIEF**

**COUNT I -- VIOLATION OF TRUTH IN LENDING ACT, 15 U.S.C. § 1601 et seq.**

42. Plaintiffs incorporate all the preceding paragraphs by reference.

43. The Defendant in this consumer credit transaction, by its failure to make accurate or properly timed Closing Disclosures (of the Annual Percentage Rate, Amount Financed, and Finance Charge, and Total Sale Price) in a form the consumer could keep 72 hours prior to closing, violated the Truth in Lending Act and implementing Regulations, 15 U.S.C. § 1601 *et seq*. and Regulation Z § 1026.19(f)(1)(ii).

**WHEREFORE**, Plaintiffs respectfully request the following relief under this Count:

(a) Actual damages/restitution arising out of its suppression of loan terms and other relief afforded by law;

(b) Reasonable attorneys fees and the cost of this litigation; and

(c) Such other relief the Court deems equitable and just.



**Exhibit A - NOR**

**COUNT II—UNCONSCIONABLE INDUCEMENT AND UNCONSCIONABLE CONTRACT**

44. The Plaintiffs incorporate the preceding paragraphs by reference.

45. By letter dated March 3, 2025, Plaintiffs notified Vanderbilt of its violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA") and provided Defendant with an opportunity to cure as required by W. Va. Code § 46A-5-108.

46. More than 45 days have elapsed and Defendant Vanderbilt has failed or refused to cure the violations.

47. The Plaintiffs and the Defendant occupy dramatically unequal bargaining positions, including that:

(a) Plaintiffs are unsophisticated in home financing and have limited ability to deal with the impact of financing terms.

(b) Defendant VMF is a large national lender engaged in the business of making home secured loans.

48. The Defendant deceptively induced the Plaintiffs into the exploitive financing by misrepresenting the exploitative sale price, suppressing the financing terms, and unilaterally imposing exploitive rates and terms on the Plaintiffs.

49. The Defendant sold and financed the doublewide at an excessive price.

50. The Defendant suppressed essential terms of the transaction deceptively inducing the Plaintiffs into exploitive terms through a bait and switch financing scheme and failing to provide closing disclosures in advance of consummation as required by federal law..

51. The contract was formed without a true meeting of minds. The financing transaction was induced by failure to afford a meaningful opportunity to understand the parameters and terms of the transaction. The contract at issue was adhesive and drafted by said Defendant and its agents.

52. The contracts contained unfair terms, which came as a surprise to the Plaintiffs, including but not necessarily limited to the excessive cost for a defective home.

53. The loan was unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct and therefore is unenforceable.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) A declaration that the transaction was induced by unconscionable conduct and/or contained unconscionable terms, and constituted unconscionable contract;

(b) Actual damages and civil penalty for each violation of the WVCCPA pursuant to W. Va. Code § 46A-5-101, -106;

(c) Reasonable attorney's fees and the costs of this action; and

(d) All other relief the Court deems equitable and just.

**COUNT III- CONTRACT DEFENSE OF FRAUD AND CLAIM FOR RESTITUTION/DAMAGES**

54. The Plaintiffs incorporate all previous paragraphs by reference.

55. The Plaintiffs allege that the Defendant and its agents misrepresented the price of the home/transaction and suppressed that they intended to charge a greater price.

56. The misrepresentation was intentional and pursued with the intention of inducing the plaintiffs to contract

57. The representation of price and cost were material to Plaintiffs in entering into transaction.

58. The Plaintiffs justifiably relied upon the misrepresentation in entering into the transaction.

59. The Plaintiffs were damaged by an indebtedness that vastly exceeds market value and what had been agreed and by nonperformance

**WHEREFORE**, the Plaintiffs respectfully request the following relief:

(a) A declaration of revocation and/or restitution and set off against the amount claimed on the loan;

(b) Punitive damages;

(c) Attorney fees and costs; and

(d) Such other relief as this Court deems equitable and just.

**COUNT IV—ILLEGAL MORTGAGE LOAN**

59. The Plaintiffs incorporate by reference all preceding paragraphs.

60. The Plaintiffs allege that the Defendant (i) took a security interest in personal property by lien on title, (ii) the mortgage loan is secured by a deed of trust lien in nine acres of real property, and (iii) the deed of trust references a security interest in unaffixed personal property, and by rider not intended to be affixed, all in violation of W. Va. Code § 31-17-8(m)(5).

61. The Plaintiffs allege that copies of all executed mortgage loan documents were not provided to each of the Plaintiffs at closing, all in violation of W. Va. Code § 31-17-8(j)(6).

62. The Plaintiffs allege that Defendant's violations of W. Va. Code § 38-17 were knowing and willful.

**WHEREFORE**, the Plaintiffs pray for the following relief:

(a) Cancellation of the mortgage loan/lien;

(b) Reasonable attorney's fees and costs; and

(c) Such other relief the Court deems equitable and just.

**COUNT V - BREACH OF IMPLIED WARRANTIES**

63. Plaintiffs incorporate the previous paragraphs by reference.

64. Pursuant to the contract and West Virginia Code § 46A-2-103, Defendant Vanderbilt as the holder is subject to all claims and defenses applicable thereto.

65. Implied in the sale of the home are warranties of merchantability and fitness for a particular purpose under W. Va. Code § 46-2-314 & -315.

66. Among other things, for a good, including a manufactured home, to be merchantable, it must pass without objection in the trade under the contract description and be fit for the ordinary purposes for which such goods are used. *Id.* at § 46-2-314(2).

67. Likewise, in the sale of a manufactured home, in which the seller knows that the purchaser intends to use the home as a place of residence, there is an implied warranty that the home shall be fit for such purpose. *Id.* at § 46-2-315.

68. The seller breached these warranties as hereinbefore alleged by selling to the Plaintiffs a home which demonstrated significant construction and habitability defects.

69. Defendant and seller failed to cure the defects within a reasonable time, depriving Plaintiffs of their use and enjoyment of the home consistent with its intended purpose.

70. The Plaintiffs were damaged as a proximate result of the breach.

**WHEREFORE**, the Plaintiffs respectfully request the following relief:

(a) Declaration of revocation and/or restitution and set off against the amount claimed on the loan;

(b) Consequential damages, fees and costs; and

(c) Such other relief as this Court deems equitable and just.

**COUNT VI – FRAUD AS A DEFENSE TO CONTRACT AND FOR DAMAGES**

71. Plaintiffs incorporate the preceding paragraphs by reference.



**Exhibit A - NOR**

72. Pursuant to the contract and West Virginia Code § 46A-2-103, Defendant Vanderbilt is the holder of this contract and subject to all claims and defenses applicable thereto.

73. The subject transaction was induced by fraud and therefore is unenforceable.

74. The Plaintiffs were induced by the Defendant's knowing and false representation that Defendant's agents/the seller would fully install the manufactured home with utilities quickly in a livable condition on Plaintiffs' property.

75. This misrepresentation was knowing and intentional and material to Plaintiffs' decision to enter into the contract.

76. In fact, as set forth above, Defendant's agents/the seller failed to take the steps it agreed to take to install the home in a livable condition for at least six months after the date it said it would be complete.

77. Plaintiffs relied on Defendant's representations regarding the installation of their home in entering into the contract to purchase the home.

78. As a result, Plaintiffs agreed to finance sums of money to cover the services that were never performed, including installation of all utilities.

79. The misrepresentations by Defendant were knowing and intentional, and Plaintiffs reasonably relied upon the misrepresentations when entering into the contract, to their detriment.

80. The Plaintiffs were damaged by relying on these representations as hereinbefore alleged.

**WHEREFORE**, the Plaintiffs respectfully request the following relief:

(a) A declaration of revocation and/or restitution and set off against the amount claimed on the loan;

(b) Punitive damages;

(c) Attorney fees and costs; and

(d) Such other relief as this Court deems equitable and just.

**COUNT VII – BREACH OF CONTRACT**

81. Plaintiffs incorporate all of the preceding paragraphs by reference.

82. Pursuant to the express language of the contract and West Virginia Code § 46A-2-103, Defendant Vanderbilt as the holder of this contract is subject to all claims and defenses applicable thereto.

83. The contractual duties under the contract are hereinbefore set forth.

84. Plaintiffs fulfilled their duties under the contract.

85. Defendant and its agents breached the terms of the transaction, as hereinbefore set forth in detail.

86. Plaintiffs were damaged by the breach.

**WHEREFORE**, the Plaintiffs pray for the following relief:

(a) Cancellation of the mortgage loan;

(b) Reasonable attorney's fees and costs; and

(c) Such other relief the Court deems equitable and just.

**COUNT VIII – JOINT VENTURE**

87. Plaintiffs incorporate all of the preceding paragraphs by reference.

88. The Defendant had an agreement with the dealer, either written, oral, constructive, or otherwise for a single business enterprise, that is the closing of the sale and financing of the home at issue in this case.

89. Defendant shared in the profits and losses of the single business enterprise.

90. The Defendant and the dealer combined their money, skill, and/or knowledge to carry out this single business enterprise.



**Exhibit A - NOR**

91. Each of the acts of the Defendant and dealer were done in furtherance of a joint venture in which each of the acts were pursued with a joint purpose, and each of the acts of one is the act of the others.

92. The Defendant exercised a degree of control over the dealer in carrying out the single business enterprise.

93. Each of the Dealer' acts were conducted as a part of the principal-agency relationship between the Defendant and dealer.

**WHEREFORE**, Plaintiff prays that the Defendant be liable for all acts or omissions committed by the dealer – in the scope of the dealer's agency and/or joint venture.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**Plaintiffs,**
**AMANDA B. RIFFLE and**
**JASON C. RIFFLE,**
**By Counsel:**

*/s/ Daniel F Hedges*
Daniel F. Hedges (WVSB # 1660)
MOUNTAIN STATE JUSTICE, INC.
1217 Quarrier Street
Charleston, WV 25301
304-553-4843
dan@msjlaw.org

Lydia C. Milnes (WVSB #10598)
MOUNTAIN STATE JUSTICE, INC.
1029 University Ave., Ste. 101
Morgantown, WV 26505
lydia@msjlaw.org

*Counsel for Plaintiffs*

# SUMMONS

E-FILED | 6/5/2025 11:12 AM
CC-49-2025-C-42
Upshur County Circuit Clerk
Brian P. Gaudet

IN THE CIRCUIT COURT OF UPSHUR COUNTY, WEST VIRGINIA

**AMANDA B RIFFLE v. VANDERBILT MORTGAGE & FINANCE, INC.**

Service Type: Filer - Secretary of State

NOTICE TO: VANDERBILT MORTGAGE & FINANCE, INC., C/O CT CORPORATION SYSTEM, 5098 WASHINGTON ST W STE 407, CHARLESTON, WV 25313

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Daniel Hedges, 1217 Quarrier St , , Charleston, WV 25301

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 6/5/2025 11:12:27 AM | /s/ Brian P. Gaudet |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on ______________________

☐ I certify that I personally delivered a copy of the Summons and Complaint to ______________________

______________________

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling or usual place of abode to ______________________, someone who is eighteen (18) years of age or above and resides there.

☐ Not Found in Bailiwick

| ______________________ | ______________________ |
|---|---|
| Date | Server's Signature |

**Exhibit A - NOR**

**STATE OF WEST VIRGINIA,**
**COUNTY OF UPSHUR, TO-WIT:**

I, Brian P. Gaudet, Clerk of the Circuit Court of Upshur County, West Virginia, certify that A Summons/Complaint was mailed to the following persons at the addresses given below, on: 6/5/2025.

**Vanderbilt Mortgage & Finance, Inc.**
**C/O CT Corporation System**
**5098 Washington St W. STE 407**
**Charleston, WV 25313**

9589 0710 5270 0212 9237 05

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

OFFICIAL USE

25-C-42

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$

Postmark Here

Sent To: Vanderbilt Mortgage & Finance, Inc
c/o CT Corporation System
Street and Apt. No., or PO Box No.: 5098 Washington St., W STE 407
City, State, ZIP+4®: Charleston, WV 25313

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

Documents mailed by:

☐ Regular First Class
☒ Certified Mail
☒ Return Receipt Requested
☐ Restricted Delivery

**Brian P. Gaudet**
Circuit Clerk
By: [signature]
Deputy

**Exhibit A - NOR**

USPS TRACKING #

FILED | 6/12/2025 10:16 AM
CC-49-2025-C-42
Upshur County Circuit Clerk
Brian P. Gaudet

Mail
Fees Paid
G-10

9590 9402 8766 3310 5282 74

United States
Postal Service

• Sende ... is box•

Brian P. Gaudet, Circuit Clerk
Court House Annex
38 W. Main St., Room 304
Buckhannon, WV 26201

25-C-42

**Exhibit A - NOR**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vanderbilt Mortgage & Finance Inc
c/o CT Corporation System
5098 Washington St W STE 407
Charleston, WV 25313

9590 9402 8766 3310 5282 74

2. Article Number (Transfer from service label)

9589 0710 5270 0212 923

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X [signature] ☑ Agent ☐ Addressee

B. Received by (Printed Name) N Mushy

C. Date of Delivery 6/10/25

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

FILED
2025 JUN 12 A 9:44
BRIAN GAUDET
CIRCUIT CLERK

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

**Exhibit A - NOR**

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt